UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DESIGN BASICS, LLC, and, | ) | |
| W.L. MARTIN HOME DESIGNS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:16-CV-175-TLS |
| | ) | |
| HELLER & SONS, INCORPORATED, | ) | |
| d/b/a/ Heller Homes, and HELLER | ) | |
| DEVELOPMENT CORPORATION | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiffs Design Basics, LLC, and W.L. Martin Home Designs, LLC's (WLM), Motion for Partial Summary Judgment [ECF No. 45] and Defendants Heller & Sons, Inc., d/b/a. Heller Homes, and Heller Development Corp.'s Motion for Partial Summary Judgment [ECF No. 42], both filed on January 26, 2018. The parties both filed Responses on February 16, 2018, followed by Replies on March 2, 2018. This matter is now fully briefed and ripe for review.

**FACTUAL BACKGROUND**

Design Basics owns copyrighted home plans, including some registered by its affiliate WLM. In 2010, Design Basics filed suit in Colorado against ProBuild Company LLC, ProBuild North, LLC, and Lanoga Corporation (collectively "ProBuild"), alleging copyright infringement of Design Basics' home plans. ProBuild owns and operates a chain of lumber yards and building supply centers and was accused of selling Design Basics' copyrighted home plans to ProBuild's

customers without paying Design Basics' licensing fees. In 2011, Design Basics and ProBuild entered into a settlement agreement (PSA), which had several key provisions, including: (1) Design Basics agreed to release claims related to infringement of Design Basics' copyrighted home plans against any customer of ProBuild or ProBuild's predecessors; (2) Design Basics agreed to grant a retroactive license both to ProBuild and ProBuild's predecessors and to any of their customers regarding these plans; and (3) such license would not be applicable if, within 60 days following a written inquiry by Design Basics, ProBuild or the accused customer failed to submit sufficient evidence to show that ProBuild or one of its predecessors created a home plan for that customer that was copied or derived from one of Design Basics' home plans prior to the effective date of the PSA. Such written inquiry was subject to certain requirements, such as, Design Basics had to forward the notice to certain identified people, and the notice had to include certain information regarding the alleged infringement, including identifying a particular home plan, the alleged infringer, and contact information for the alleged infringer. The PSA became effective on September 12, 2011.

On April 4, 2016, Design Basics sent a letter to ProBuild, stating that Design Basics believed that some of Heller Homes' home plans infringed Design Basics' home plans. This letter was not sent to ProBuild's counsel, Timothy M. Reynolds, which was one of the procedural requirements for Design Basics' written inquiry under the PSA. ProBuild asserts that it did not receive the letter until April 8, 2016.

On June 3, 2016, ProBuild responded to Design Basics' inquiry and indicated that Wickes Lumber, a claimed predecessor of ProBuild, had designed three of the accused home plans prior to the effective date of the PSA. ProBuild attached drawings of the plans, affidavits by Mark Heller (principal of Heller Homes) and Dennis Hakes (salesman for Wickes and

ProBuild). On June 7, 2016, ProBuild served Design Basics' counsel with an amended Affidavit by Mark Heller, which indicated that the same three accused designs were acquired from Wickes prior to the year 2000. On July 7, 2016, Design Basics notified ProBuild that the evidence that ProBuild submitted regarding the origin of the accused plans was insufficient under the PSA. Accordingly, Design Basics refused to grant a retroactive license to Heller Homes or to release Heller Homes from any claims associated with the accused plans.

On July 12, 2016, ProBuild sent a letter to Design Basics arguing that the evidence ProBuild had submitted was sufficient under the PSA and requested proof as to whether WLM was controlled by Design Basics and therefore bound by the PSA. On August 10, 2016, ProBuild submitted further evidence in support of retroactive licensing and release to Heller Homes, and Mark Heller appeared for a deposition on August 16, 2017, regarding his affidavits pursuant to provisions of the PSA.

On May 22, 2016, Design Basics and WLM sued the Defendants, alleging that the Defendants had infringed Design Basics' copyrights in the following works:

| Accused Heller Homes Design | Design Basics' Home Design |
|---|---|
| Arthur Williams | Plan 1032 (Monte Vista) |
| David Matthew II | Plan 1380 (Paterson) |
| Greyson | Plan 1748 (Sinclair) |
| David Matthew I | Plan 1742 (Lancaster) |
| Spencer 5 | Plan 24077 (Baisden) |

## STANDARD OF REVIEW

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden

3

of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

**ANALYSIS**

As relevant to the instant Motions, the Parties dispute whether Wickes Lumber is a predecessor of ProBuild, whether Design Basics is collaterally estopped from asserting that Wickes Lumber is not a predecessor of ProBuild, whether ProBuild timely responded to Design Basics' written inquiry regarding the Heller Homes plans, whether Design Basics' written inquiry complied with the PSA, and whether the evidence submitted to Design Basics was sufficient under the PSA.

**A.      Whether Wickes is a Predecessor of ProBuild**

The first question the Court must consider is whether Wickes is a predecessor of ProBuild. If Wickes is not a predecessor of ProBuild, then Heller Homes cannot be a third party beneficiary to the PSA and will enjoy none of the PSA's protections.

*1.     Collateral Estoppel*

The Defendants first argue that Design Basics is collaterally estopped from asserting that Wickes is not a predecessor of ProBuild based on a prior litigation in the Eastern District of Wisconsin. In that case, the court found that Wickes' customers were protected under the PSA based on the plain language of the PSA. *See Design Basics, LLC v. Midwest Design Homes, Inc.*, No. 14-C-1033, 2016 WL 8117702, at *2 (E.D. Wis. Sept. 30, 2016). Design Basics argues that the passage on which the Defendants rely is dicta in a partial summary judgment order, which was decided in favor of Design Basics. Therefore, Design Basics contends that the issue was not adjudicated in the manner contemplated by collateral estoppel.

Collateral estoppel precludes the re-litigation of an issue where (1) the pertinent issue was identical to an issue involved in a prior action; (2) the issue was actually litigated in the prior action; (3) determination of the issue was essential to the final judgment in the prior action; and (4) the party being precluded from re-litigating the issue was represented in the prior action. *See Chi. Truck Drivers v. Century Motor Freight, Inc.*, 125 F.3d 526, 530 (7th Cir. 1997). The Defendant argues that all of these requirements are met because (1) whether Wickes was a ProBuild predecessor was at issue in *Design Basics v. Midwest*; (2) the issue was actually litigated as shown by the partial summary judgment order; (3) determination that Wickes was a ProBuild predecessor was essential to the judgment, which for the purposes of collateral estoppel was a final order; and (4) as a party to the litigation, Design Basics was represented. The Parties do not appear to dispute the first and fourth requirements.

Design Basics responds that in *Design Basics v. Midwest*, it never argued that Wickes was not a predecessor of ProBuild and instead focused on whether the conditions of the PSA were satisfied. Further, Design Basics contends, the court denied Midwest's motion, and the

5

interlocutory order adjudicated nothing more than that Midwest was not entitled to summary judgment. Design Basics first argues that because finding that Wickes was a predecessor of ProBuild was not necessary to support a denial of summary judgment, the issue cannot have been a "critical and necessary part" of the judgment. Second, because the partial summary judgment order was interlocutory, it was not subject to appeal and therefore was not "sufficiently reliable" so as to collaterally estop a litigant. Moreover, as the prevailing party in that judgment, Design Basics lacked standing to appeal and did not have an opportunity to contest the finding.

The Defendants respond that the determination that Wickes was a predecessor of ProBuild was a "critical and necessary part" of the *Design Basics v. Midwest* judgment because it was necessary in order to determine that Midwest had standing under the PSA. The Defendants also argue that the ability to appeal the ruling at issue is not necessary for collateral estoppel, and, in any event, Design Basics waived its right to appeal by failing to contest Midwest's assertion that Wickes was a predecessor of ProBuild.

The Court finds that the *Design Basics v. Midwest* court's apparent conclusion that Wickes was a predecessor of ProBuild was not a "critical and necessary part" of the judgment. The partial summary judgment order found that Midwest was a third party beneficiary to the PSA because the language of the PSA "is clear and because it is undisputed that Defendants were customers of ProBuild and of ProBuild predecessor Wickes Lumber . . . ." *Midwest*, 2016 WL 8117702, at *2. The court made no findings as to what, if any, of the accused plans were drawn for Midwest by Wickes, and in fact, Design Basics disputed that any of the accused home plans were drawn by Wickes. The issue before the court was whether Midwest had standing to assert defenses based on the PSA. Midwest was also a customer of ProBuild, so the court could have concluded that Midwest had standing—based on its business relationship with ProBuild—

without considering whether Wickes was a predecessor of ProBuild. Therefore, the Court cannot find that Design Basics is collaterally estopped from asserting that Wickes is not a predecessor ProBuild within the meaning of the PSA.

2. *Admission in Previous Litigation*

The Defendants also argue that the Court may take judicial notice of Design Basics' failure to dispute Midwest's assertion that Wickes was a predecessor of ProBuild during summary judgment in the prior litigation. The Defendants claim that this failure has the effect of an admission in the instant litigation. It is true that the Court may take judicial notice of court documents from another case and that such documents "may be used to show that the document was filed, that [the] party took [a] certain position, and that certain judicial findings, allegations or admissions were made." *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, No. 3:05-MD-527, 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010) (citing *Gen. Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1081 (7th Cir. 1997)). In response to Midwest's statement of facts in its motion for summary judgment that "Wickes Lumber is a predecessor of ProBuild," Design Basics stated that it "lack[ed] the knowledge to dispute this claim."

The Court is not inclined to hold that a failure to dispute a fact during summary judgment proceedings in one litigation gives rise to an admission in a separate litigation. Nothing in Federal Rule of Civil Procedure 56 provides that where a party states that it lacks knowledge regarding the material fact at issue, a court must treat such a failure to dispute as an admission. Nor do the Local Rules for the Northern District of Indiana provide that a fact that a party fails to admit or dispute due to its lack of knowledge is deemed admitted. *Cf. Universal Calvary Church v. City of N.Y.*, No. 96 Civ. 4606, 2000 WL 1745048, at *2 n.5 (S.D.N.Y. Nov. 28, 2000) (noting

7

that under the local rules, the answer "Plaintiff can neither admit nor deny this statement based upon the factual record" was insufficient to establish a dispute because the local rules expressly provided that the moving party's statements of fact would be "deemed to be admitted unless controverted"). At best, Rule 56 provides that, in the event the responding party fails to adequately support its denials of the moving party's asserted facts, a court *may* "consider the fact undisputed for purposes of the motion." Fed. R. Civ. Pro. 56(e)(2). Rule 56(e) does not require a court to consider the fact undisputed, nor does Rule 56(e) contemplate such use of the fact outside the scope of the summary judgment motion in which it was asserted. Therefore, the Court does not find that Design Basics admitted that Wickes is a predecessor of ProBuild.

### 3. *ProBuild's Acquisition of Wickes*

The Court now turns to the merits of whether Wickes is a predecessor of ProBuild. The dispute centers on how broadly or narrowly the term "predecessor" is defined. After filing for bankruptcy, Wickes' assets were purchased by Lanoga, which was a predecessor of ProBuild. Design Basics argues that because it was only an asset, as opposed to a stock, sale and because Lanoga did not assume Wickes' legal liabilities, Wickes was not a predecessor of Lanoga and therefore not a predecessor of ProBuild. "Interpretation of a written contract and the determination of whether a provision in the contract is ambiguous are questions of law." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990).[1] "In determining

---

[1] Design Basics asserts that Section 13 of the PSA provides that it will be interpreted under Colorado law; however, Section 13 is redacted in the copy of the PSA filed with the Court. The parties have not briefed any potential choice of law issues as they pertain to this, or any other, affirmative defense. Because the Defendants do not dispute this assertion, the Court will analyze the interpretation of the PSA under Colorado law and will not undertake a choice of law analysis as to the PSA. The Court also will not pass on any other potential choice of law issues that may arise in this case.

whether a contractual provision is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, with reference to all of the agreement's provisions, and a provision is ambiguous if it is fairly susceptible to more than one interpretation." *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 912 (Colo. 1996) (internal quotations omitted). If a court determines that a contract is ambiguous, "the meaning of its terms is generally an issue of fact to be determined in the same manner as other disputed factual issues." *Id.* (quoting *Union Rural Elec. Ass'n v. Pub. Utils. Comm'n*, 661 P.2d 247, 251 n.5 (Colo. 1983)).

"The overriding rules of contract interpretation require a court to apply the plain meaning of the words used, subject to interpretation from the context and circumstances of the transactions." *First Christian Assembly of God, Montbello v. City & Cty. Of Denver*, 122 P.3d 1089, 1092 (Colo. App. Ct. 2005) (internal citations omitted). The parties failed to define "predecessor" in the PSA, so the Court must turn to the common meaning of the term.

According to Black's Law Dictionary (10th ed. 2014), a predecessor is defined in relevant part as "[s]omeone who precedes another, esp. in an office or position." The tenth edition of Black's Law Dictionary defines the related term "successor"[2] as it pertains to corporations as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation."[3] However, the

---

[2] The term "successor" is not used in the PSA, and therefore its definition is helpful only to the extent it contrasts with the term "predecessor."

[3] The Court notes that Design Basics' argument rests on the definition of predecessor from the fifth edition but uses the tenth edition for its definition of successor. The fifth edition of Black's Law Dictionary defined predecessor as "the correlative of successor." *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1190, 1253 n.79 (E.D. Pa. 1980) (citing the Black's Law Dictionary (5th ed. 1979)). The fifth edition defines "successor in interest" as it pertains to corporations as "ordinarily

9

definition of predecessor "does not express or require any relation of legal privity." *CBS Outdoor, Inc. v. 800 Lincoln LLC*, No. 11-cv-2233, 2012 WL 4356241, at *11 (D. Colo. Sept. 24, 2012). And, courts have held that successor "does not and cannot have a 'formal definition' because its definition depends on the facts . . . at issue." *Id.* at *12 (citing *N.R.L.B. v. Jarm Enters., Inc.*, 785 F.2d 195, 200 (7th Cir. 1986)). "[T]he more usual definition of successor includes a business that succeeds to the whole or part of the business of another company." *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 845 (Colo. Ct. App. 2007) (finding trial court had not abused its discretion in concluding company was a successor). "The term successor has [also] been defined as one that succeeds or follows: one who takes the place which another has left and sustains the like part or character." *White v. Short*, 794 P.2d 1110, 1111 (Colo. Ct. App. 1990). Given the broad and varied meanings of these terms, the language of the PSA is fairly susceptible to more than one interpretation. Thus, the Court finds that the term "predecessor" is ambiguous as used in the PSA.

Both parties present speculative arguments as to what the parties to the PSA meant when they entered into the agreement regarding what entities would constitute "predecessors" of ProBuild. The Defendants argue that it would be manifestly unfair for them to be unable to assert defenses based on the PSA, and Design Basics argues that extending this common term to include the transaction between Lanoga and Wickes would set an undesirable precedent. The intent of the parties entering the contract, and whether an entity is a third party beneficiary, is a question of fact, and it is for the jury to decide whether the parties intended to include entities such as Wickes that were subject to an asset sale rather than a stock sale within the meaning of

---

indicat[ing] statutory succession as, for instance, when corporation changes its name but retains same property," which is notably different from Design Basics' proposed definition of successor. *Id.*

10

the term "predecessor." *See Dorman*, 914 P.2d at 912 (quoting *Union Rural Elec. Ass'n*, 661 P.2d at 251 n.5); *East Meadows Co., LLC v. Greeley Irrigation Co.*, 66 P.3d 214, 217 (Colo. App. Ct. 2003). Therefore, the Court will not grant summary judgment to either party on the issue of whether Wickes is a predecessor of ProBuild.

B.     **Sufficiency of Written Inquiry and Response**

As part of the PSA, Design Basics granted a retroactive license to ProBuild and ProBuild's predecessors for copyrighted works owned or controlled by Design Basics. Design Basics also granted a retroactive license to ProBuild's and its predecessors' customers for whom ProBuild or its predecessors drew home plans, prior to the Effective Date of the PSA. However, the PSA provided for an exception to this licensing requirement:

> [W]ithin 60 days after receipt of written inquiry by Design basics . . . delivered to ProBuild, attn.: Mark Butterman, Senior Vice President & General Counsel, 7595 Technology Way, Suite 500, Denver Colorado, 890237, with a copy to Timothy M. Reynolds, Holme Roberts & Owen LLP, 1801 13th Street, Suite 300, Boulder, Colorado, 80302, identifying a particular home plan, the alleged infringer, and contact information for the alleged infringer, ProBuild or the alleged infringer must show by contemporaneous invoice or other documentation that ProBuild or one of ProBuild's predecessors copied or created a derivative of the home plan for the alleged infringer prior to the Effective date of this Agreement. Sufficient evidence shall include a contemporaneous home plan in ProBuild's files (i) that is substantially similar to the home plan at issue; (ii) that was prepared for the alleged infringer by ProBuild or its predecessor prior to the Effective Date as shown by documentation or sworn statement by a person with personal knowledge. In the event that ProBuild or the alleged infringer provide only a contemporaneous home plan from ProBuild's files and a sworn statement, then Design Basics . . . shall be entitled, if they so request, to interview the affiant under oath for no more than one hour concerning the contents of the sworn statement. Design Basics shall be entitled to challenge the sufficiency of such evidence, with any dispute regarding whether ProBuild or one of its predecessors in fact created the plan in question for the alleged infringer prior to the Effective Date to be treated as a dispute relating to this Agreement. The failure of ProBuild or the alleged infringer to provide such evidence within the time specified shall prohibit such alleged infringer from claiming any rights to the license grated herein concerning that particular home plan."

(PSA 5, ECF No. 46-3.)

On April 4, 2016, Design Basics sent a letter to Mark Butterman, alleging that certain of the Defendants' home plans infringed Design Basics' copyrights. The Defendants argue that Design Basics' April 4, 2016, letter was deficient as a written inquiry because Design Basics failed to send a copy to ProBuild's outside counsel, Timothy M. Reynolds, as explicitly required, and therefore, the inquiry was not operative to begin the sixty-day time period in which the Defendants had to submit evidence regarding the creation and sale of the accused home plans. Regardless, the Defendants argue that the June 3 and June 7, 2016, responses were timely because ProBuild did not receive Design Basics' letter until April 8, 2016. Design Basics disagrees that the June 7, 2016, submission was within the sixty-day period. The Court assumes that this disagreement is premised on the fact that Design Basics sent the letter on April 4, 2016, and the sixty-day period therefore extended only until June 3, 2016. But, the PSA clearly states that the Defendants needed to respond within sixty days after *receipt* of written inquiry, not within sixty days of the date of the inquiry. Design Basics has produced no evidence tending to show that ProBuild in fact received the April 4, 2016, letter prior to April 8, 2016. Thus, the Court agrees with the Defendants that the materials submitted to Design Basics on both June 3 and June 7, 2016, were timely.

The next question the Court must address is whether the supplemental evidence that the Defendants submitted after the sixty-day period was timely. The Defendants submitted additional evidence to Design Basics on August 10, 2016, and Design Basics deposed Mark Heller on August 17, 2017. The Defendants submitted to the Court a copy of an email conversation from December 2016, between counsel for the parties, in which they stipulated that Design Basics would defer sending the sixty-day notice letter as contemplated by the PSA "until the parties

12

conclude[d] settlement negotiations and/or mediation that fail to result in a settlement." (*See* Defs. Br. in Supp. of Sum. J. Ex K 25–26, ECF No. 44-2.) The Defendants argue that because no mediation has occurred yet, and because Design Basics has yet to send the contemplated notice letter, any evidence that the Defendants submit remains timely. Design Basics does not address this assertion in its briefing. The Court finds the Defendants' argument persuasive, and agrees that the supplemental evidence submitted after June 7, 2016, was timely.

C. **Sufficiency of the Evidence Submitted to Design Basics**

*1. The Defendants' Spencer 5 Plan*

The accused Spencer 5 plan correlates to Design Basics' Baisden plan, which was created by WLM, not Design Basics. The Defendants' contention regarding the Spencer 5 Plan is that it predates the Baisden plan and therefore cannot be a copy or derivative of the Basiden plan. In support, the Defendants offer United States Copyright Office records, which show that the Baisden plan was not published until August 18, 2000. This is significant because a home based off of the Spencer 5 plan was fully constructed by July 18, 2000. Design Basics argues that the publication date listed on the Copyright Office Registration Certificate is incorrect, as evidenced by a sworn declaration by Pat Carmichael and a supplemental registration application filed with the Copyright Office on October 4, 2017. Thus, Design Basics asserts that there is at least a genuine issue of material fact that precludes summary judgment on this point.

In reply, the Defendants argue that they and the Court are entitled to rely on the information stated in the Registration Certificate. Registered copyrights are granted a presumption of validity if they are registered "before or within five years after first publication of the work." 17 U.S.C. § 410(c). Registration certificates constitute both prima facie evidence of

the validity of the copyright and "of the facts stated in the certificate." The Court agrees that the Registration Certificate pertaining to the Baisden plan constitutes prima facie evidence of the publication date, and it is Design Basics' burden to rebut that evidence.

Design Basics has produced rebuttal evidence, mostly by way of the Carmichael declaration, that tends to show an earlier date of publication. The Carmichael declaration states that the actual first date of publication for the Baisden plan was September 1999, when the Baisden plan was uploaded to Design Basics' website. (*See* Pl. Br. in Resp. to Defs. Mot. for Sum. J. Ex. 1, Carmichael Decl. ¶¶ 7–8, ECF No. 50-1.) The declaration states that the publication date was listed incorrectly on the initial application for copyright registration because, at the time, Design Basics was unaware that uploading the plan to its website as a "New Product Promotion" constituted publication. (*Id.* at ¶ 9.)

The Defendants argue that the statements in Carmichael's declaration are "demonstrably false." The Defendants make arguments regarding several of Carmichael's statements, including that it was W.L. Martin that signed the copyright application rather than Design Basics, that the declaration contains multiple levels of hearsay that do not fit into one of the exceptions in Federal Rule of Evidence 803, that merely posting the Baisden plan on its website did not constitute publication, and that no registration has issued as a result of the supplemental application.

The Court agrees that Carmichael's declaration does not appear to be based on personal knowledge. Under Rule 56(c)(4), any affidavit or declaration "used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." On a motion for summary judgment, a court must disregard parts of an affidavit

14

that fail to comply with this rule. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Carmichael's declaration states, in relation to the Baisden plan's registration, that his assertions are based "[u]pon review of Design Basics' business records," which does not demonstrate personal knowledge of the events surrounding the registration. (Carmichael Decl. ¶ 7.) Moreover, Carmichael states that it was Design Basics that made the discovery regarding the publication date, not his personal discovery. (*Id.*)

Although the Carmichael Declaration references business records, it does not attach the relevant business records, but instead provides only a chart that is purportedly an excerpt from those business records. However, there is no explanation as to how these business records were kept, nor even an assertion regarding the date of the record's creation. "Business records are reliable to the extent they are compiled consistently and conscientiously." *United States v. Ramsey*, 785 F.2d 184, 192 (7th Cir. 1990). But, the party offering the evidence must lay a proper foundation as to the reliability of the records, as shown by the testimony of the custodian or other qualified witness. *United States v. Briscoe*, 896 F.2d 1476, 1494 (7th Cir. 1990). Carmichael makes no assertion that he is a custodian of these records or otherwise has personal knowledge of the procedure under which these documents were created. *See Collins v. Kibort*, 143 F.2d 331, 337 (7th Cir. 1998) (finding district court abused its discretion by admitting evidence under the business records exception because the exception "does require that the witness have knowledge of the procedure under which the records were created"). Design Basics has not demonstrated that this chart otherwise meets any of the hearsay exceptions. Because his declaration demonstrates no personal knowledge of the original registration or publication of the Baisden plan at all, the Court must disregard his statements relating to the publication date of the

15

Baisden plan. Without Carmichael's Declaration, Design Basics has not produced evidence from which a reasonable trier of fact could conclude that Design Basics can overcome the presumption of validity and demonstrate an error in the original copyright application.[4] Therefore, the Court will grant summary judgment that the Defendants' Spencer 5 plan does not infringe Design Basics' Baisden plan.

### 2. *The Defendants' David Matthew Plans*

Design Basics argues that it is entitled to summary judgment on whether the Defendants submitted sufficient evidence in compliance with the PSA as to the Defendants' David Matthew plans. However, Design Basics' argument is premised on an assertion that "[n]othing that [the Defendants] submitted to Design Basics *within the sixty-day period* shows that Wickes Lumber copied or made derivatives of the accused plans for Heller Homes." (Pl. Br. in Supp. of Mot. for Sum. J. 14, ECF No. 47 (emphasis added).) Presumably, the sixty-day period referenced here commenced on April 4, 2016, rather than April 8, 2016, and thus would not include any of the evidence submitted on June 7, 2016. However, the Court has already determined that the evidence submitted on or after June 7, 2016, was timely.

Moreover, Design Basics' argument that the Defendants have not met their burden to prove that Wickes copied or created derivative works from Designs Basics' plans is not well taken. Design Basics has sued the Defendants for copyright infringement, and it is Design Basics' burden to show that its home plans were actually copied or that derivative works were

---

[4] The Court notes that if the Copyright Office were to grant the supplemental application, there would be a presumption that the correct date is the earlier date, and the burden would then shift to the Defendants to overcome that presumption. If the Copyright Office does grant the supplemental application, the parties may file a motion for reconsideration of this issue, and the Court will evaluate the parties' arguments in light of the shifted burden at that time.

actually created. And, until Design Basics makes that showing, the Defendants have no burden on their affirmative defense. *See Sulentich, v. Interlake S.S. Co.*, 257 F.2d 316, 318 (7th Cir. 1958) (noting that this concept is "elemental"). If Design Basics cannot meet its burden to show that its designs were actually copied, the Defendants have no need of the protection of the PSA. If Design Basics meets its burden and shows that Wickes did indeed copy or create derivative works from Design Basics' plans, that element of the Defendants' affirmative defense is necessarily met.

Design Basics proposes no alternative argument that a reasonable trier of fact could not conclude that the Defendants obtained the allegedly infringing plans from Wickes prior to the date of the PSA. Therefore, Design Basics is not entitled to summary judgment regarding the David Matthew plans.

**C.     Other Defenses**

Finally, Design Basics argues that there is no evidence to support any other "license defense." It appears that the Defendants' only other "license defenses" are that they are entitled to the benefits of certain license agreements and other express or implied licenses based on historical conduct between Design Basics and predecessors of ProBuild. Design Basics argues that such defenses are logically impossible because the Defendants claim that Wickes created the plans at issue prior to 2000, which is before the earliest of any of the referenced licenses.

The Defendants argue that the Plaintiff's arguments are undeveloped, and therefore waived, and that the parties have not yet conducted discovery relating to these defenses. To that end, the Defendants attach a Rule 56(d) declaration. Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it

17

cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." In his affidavit, Attorney Marc Gravino states that, pursuant to a joint motion and a subsequent Court order, "the parties have phased discovery and limited discovery to date to the ProBuild Settlement Agreement and licenses granted thereunder." (Gravino Decl. 1, ECF No. 49.) Thus, the Defendants argue that they are not able to present facts essential to justify their opposition to Design Basics' Motion for Summary Judgment on these defenses.

On June 13, 2017, the parties jointly filed a Motion to Bifurcate Discovery [ECF No. 26], in which they agreed that discovery could not proceed cost-effectively until the issue regarding whether the Defendants were protected under the PSA was resolved. The Magistrate Judge granted [ECF No. 32] the parties' Motion and granted the parties until September 26, 2017, to conduct discovery only as to this limited inquiry. "Summary judgment should not be entered 'until the party opposing the motion has had a fair opportunity to conduct such discovery as may be necessary to meet the factual basis for the motion.'" *Chalimoniuk v. Interstate Brands Corp.*, 172 F. Supp. 2d 1055, 1057–58 (S.D. Ind. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Normally, in order to succeed on a Rule 56(d) motion, a party must identify the specific evidence that would create a genuine issue of fact. *Am. Needle, Inc. v. Nat'l Football League*, 538 F.3d 736, 740 (7th Cir. 2008) (overturned on other grounds). However, as no meaningful discovery has been conducted regarding defenses other that the defense based on the PSA, the Court will not entertain Design Basics' Motion on this point until the parties have had a fair opportunity to conduct the necessary discovery.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Defendants' Motion for Partial Summary Judgment [ECF No. 42]. The Court grants the Defendants' Motion only as to the accused Spencer 5 plan. The Court DENIES the Plaintiffs' Motion for Partial Summary Judgment [ECF No. 45] in its entirety.

SO ORDERED on May 3, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT