UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DESIGN BASICS, LLC, and, <br> W.L. MARTIN HOME DESIGNS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HELLER & SONS, INCORPORATED <br> d/b/a Heller Homes; and HELLER <br> DEVELOPMENT CORPORATION, <br><br> Defendants. | Cause No. 1:16-CV-175-HAB |

**OPINION AND ORDER**

This matter is one of dozens of lawsuits brought by Design Basics and its associated entities alleging violations of their copyrighted home designs. On June 24, 2019, this Court entered summary judgment in favor of Defendants, determining that Defendants had not violated any of the five home designs identified by Design Basics. Having determined that Defendants were the "prevailing parties" in this litigation, this Court invited Defendants to file a request for attorneys' fees pursuant to 17 U.S.C. § 505, and further invited Design Basics to file a response in opposition. Those filings have now been submitted (*see* ECF Nos. 95, 97), and the issue of attorneys' fees is now ripe for determination.

I. JURISDICTION TO DETERMINE FEE AWARD

On July 19, 2019, Design Basics filed its Notice of Appeal (ECF No. 91). Generally, the filing of a notice of appeal divests the district court of further jurisdiction over the case. However, the Seventh Circuit has recognized that there is an exception to this general rule permitting a district court to enter an attorney fee award while the merits of the case are on appeal. *Terket v. Lund*, 623 F.2d 29, 33–34 (7th Cir. 1980).

## II. DEFENDANTS' ENTITLEMENT TO ATTORNEYS' FEES

The Copyright Act provides that the district court may, in its discretion, permit the recovery of all costs of litigation in any copyright civil action, including the award of reasonable attorneys' fees. 17 U.S.C. § 505. In determining whether to award attorneys' fees, district courts consider the nonexclusive list of factors identified in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994), which include: (1) frivolity of the claim; (2) motivation in filing the claim; (3) objective reasonableness of the claim; and (4) considerations of compensation and deterrence. Attorneys' fees cannot be awarded as "a matter of course"; rather, a court must make the determination based upon a particularized, case-by-case assessment. *Id*. at 533. Unlike many other fee-shifting statutes, a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be "encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id*. at 527.

The objective reasonableness of the losing position is given "substantial weight" in determining whether attorney fees are warranted. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979, 1986 (2016). However, the Supreme Court has made it clear that objective reasonableness is "only an important factor in assessing fee applications—not the controlling one." *Id*. at 1988.

> As we recognized in *Fogerty*, § 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions. That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones). For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses. Or a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case. Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.

*Id*. at 1988–89 (citations omitted).

A.   *Frivolousness*

Defendants advance two arguments in support of their assertion that Design Basics' claims were frivolous. First, Defendants assert that "a modicum of due diligence pre-suit" would have revealed that Design Basics' claims regarding the Baisden design were frivolous, because Defendants built the home allegedly based on the Baisden claim before the Baisden plan was ever published. (ECF No. 95 at 5). Design Basics does not specifically respond to this argument in its Response in Opposition. However, after reviewing the record this Court concludes that sufficient evidence existed for Design Basics to pursue the Baisden claim even in the face of the calendar issue.

This Court addressed the Baisden issue in its Opinion and Order dated May 3, 2018 (ECF No. 54). Defendants moved for summary judgment on the Baisden claim arguing that Design Basics' original copyright application stated that the Baisden plan was not published until August 18, 2000, while construction on the allegedly infringing home finished on July 18, 2000. (*Id*. at 13). This Court determined that Design Basics had failed to designate admissible evidence to overcome the presumption that the information on the copyright application was correct, and therefore granted summary judgment on the Baisden claim in Defendants' favor. (*Id*. at 13–16).

The key word in the foregoing sentence is "admissible." Design Basics did designate evidence that the date on the copyright application was incorrect in the form of an affidavit from its principal, Pat Carmichael, and a supplemental registration application that was filed with the Copyright Office on October 4, 2017. The Court found that the Carmichael declaration was not made upon his own personal knowledge, and therefore disregarded Carmichael's statements. (*Id*. at 15). This determination does not preclude the Court from considering the affidavit for the purposes of the attorney fee determination. *See Whimsicality, Inc. v. Rubie's Costume Co.*, 836 F.

3

Supp. 112, 120 (E.D.N.Y 1993) (finding that otherwise inadmissible affidavit could be considered "for the limited purpose of deciding the fees question"). In addition, the Court also found that its determination might be different if the supplemental registration application was granted and invited the parties to file a motion for reconsideration if the application was granted. (*Id*. at 16, n. 4). Thus, while the evidence designated by Design Basics was insufficient to overcome summary judgment, it is sufficient for the Court to find that there was a factual basis to maintain the Baisden claim. *See*, *e.g.*, *Felton v. City of Chi.*, 827 F.3d 632, 635 (7th Cir. 2016) (defining frivolous as "lacking an arguable basis either in fact or law").

Defendants' second argument asserts that this litigation, and in fact all of Design Basics' copyright cases, were rendered frivolous no later than the Seventh Circuit's decision in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017).[1] To be sure, *Lexington* is not favorable to Design Basics or its claims. It described Design Basics' copyright as "thin," required "very close copying" before alleged infringement is actionable, compared Design Basics' designs to the mass-produced homes of William Levitt, and ascribed a motivation for Design Basics' litigation that was less copyright protection and more copyright trolling. It is certainly possible to read *Lexington* and conclude that it is difficult, if not impossible, for Design Basics to ever succeed on any copyright infringement suit.

That being said, the Court does not believe that *Lexington* is the magic bullet that is described by Defendants. While *Lexington* sets forth the legal standard by which Design Basics' claims must be evaluated, it does not mandate a result in any specific case. As Design Basics notes, this Court has denied summary judgment for a different defendant alleged to have violated Design

---

[1] The parties also argue the status of the law pre-*Lexington*, each arguing that the case law supported their position at the time suit was filed. As discussed in this Court's June 24, 2019, Opinion and Order (ECF No. 88 at 23–30), and as noted in both parties' attorney fee filings (ECF No. 95 at 5; No. 97 at 5), there exists a sufficient Circuit split even after *Lexington* to permit both parties to find case law supporting their version of substantial similarity.

Basics' copyrights even after applying the *Lexington* standard. *See Design Basics, LLC v. Big C Lumber*, Cause No. 3:16-CV-53, ECF No. 78. Since each case requires a court to compare different designs of Design Basics to different designs of a defendant, *Lexington* can only make Design Basics' cases difficult, not frivolous.

Nor does the Court believe that Design Basics' act of retaining Matthew McNicholas is evidence of frivolousness, as Defendants further assert. (ECF No. 95 at 7–8). It is true, as Defendants note, that McNicholas used an incorrect legal test in determining the issue of substantial similarity. However, McNicholas' report must be viewed in the context of Design Basics' arguments generally. McNicholas' report reflects more closely the analysis used by the First Circuit in *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97 (1st Cir. 2006), and that used by the D.C. Circuit in *Sturdza v. United Arab Emirates*, 281 F.3d 1287 (D.C. Cir. 2002). Design Basics recognizes that *Lexington* controls, but nonetheless asserts that *T-Peg* and *Sturdza* more properly analyze the Copyright Act in the context of architectural works. (ECF No. 75 at 12, n.2). Given this assertion, the Court views the hiring of McNicholas as little more than part of Design Basics' effort to overturn *Lexington*. That will be a tall task, but the attempt to complete the task in this case is not frivolous.

B.  *Motivation*

There is conflicting evidence in the record regarding Design Basics' motivation in filing this and other similar actions. Design Basics claims that the sole reason for its copyright violation suits is "to protect its valuable intellectual property, which it invested considerable resources to design and market over many years." (ECF No. 97 at 7). In support of this claim, Design Basics notes that the revenues from the licensing of their designs has fallen more than 75%, which they attribute to "the widespread theft of its valuable home designs from the internet." (*Id.*).

Defendants, on the other hand, assert that Design Basics is "motivated by proceeds from litigation, rather than a desire to keep control over its intellectual property." (ECF No. 95 at 8). This is certainly the view taken by the Seventh Circuit in *Lexington*. Judge Hamilton referred to Design Basics' litigation tactics as "the Art of the Intellectual Property Shakedown," stating that firms like Design Basics "try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation." *Lexington*, 858 F.3d at 1097. Carmichael has acknowledged that potential litigation income "influenced his decision to become an owner of Design Basics," *id.* at 1096–97, and the cases have been extraordinarily lucrative for Design Basics' owners: the owners realized approximately $5 million in net litigation profits in 2016 and 2017 alone, while the gross revenues for Design Basics during the same period of time were approximately $2.5 million. *Big C Lumber*, ECF No. 78 at 4. Where Design Basics was once an architectural firm that occasionally litigated copyright issues, it now appears to be copyright litigation firm that occasionally licenses one of its designs.

While the Court believes that Design Basics' motivation for filing this and other similar suits hues more closely to Defendants' explanation, it nonetheless finds that the truth is likely somewhere in the middle. There is no question in the Court's mind that some of Design Basics' designs have been copied. This Court found actual evidence of copying in the *Big C Lumber* case. *Id.*, ECF No. 78 at 11–15. The widespread distribution of Design Basics' plans,[2] and the apparent ease of turning those plans into construction drawings, all but assures that there are hundreds, if

---

[2] The Court believes that Design Basics must take some responsibility for creating an environment where the infringement of its designs was so potentially prevalent. Design Basics distributed millions of free copies of its designs to home builders and drafting departments and made its designs available for free to the public via its website and any number of affiliated websites. Given these efforts, Design Basics can hardly be surprised that some of its plans would be used in unauthorized ways.

6

not thousands, of homes that have been constructed using a Design Basics' plan without proper licensing.

The evidence in the record strongly suggests that Design Basics has taken isolated incidents of actual copying and used them as grounds to embark on an ambitious litigation campaign. Design Basics paid its employees to scour the internet for plans that looked similar to its own. It used superficial similarity to file lawsuits like the one at bar, where it had absolutely no evidence of actual copying. It has apparently *never* tried a single copyright infringement claim to a jury, instead resolving cases it does not lose on summary judgment through confidential settlements. The Court, therefore, believes that while some of Design Basics' cases are filed to address actual cases of infringement, most, including the case at bar, are filed out of a purely financial motive.

C.   *Objective Reasonableness*

The Court incorporates, by reference, its discussion of frivolousness in Section A. above. The Court would additionally note that, despite not meeting the legal standard for substantial similarity discussed in *Lexington*, there are undeniable similarities between Design Basics' plans and those of Defendants. *See* ECF No. 88 at 6–11, 13–17. These similarities, in and of themselves, are sufficient for this Court to find that the suit was objectively reasonable even though it could not survive summary judgment. *See*, *e.g.*, *Amusement Art, LLC v. Life is Beautiful, LLC*, 768 Fed. Appx. 683, 667 (9th Cir. 2019) (noting "a number of striking similarities" as basis to deny attorneys' fees); *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (existence of "limited similarities" between cartoon characters demonstrated infringement claim was not objectively unreasonable); *Kebodeaux v. Schwegmann Giant Super Mkts., Inc.*, 1994 WL 507421, *1 (E.D. La. Sept. 14, 1994) (similarities between jingles could imply copying, thus making claim objectively reasonable).

D. *Considerations of Compensation and Deterrence*

The Court finds that this factor weighs most in favor of the award of attorney fees. As stated by Judge Posner,

> We said that as a consequence of the successful defense of an infringement suit the defendant is entitled to a "very strong" presumption in favor of receiving attorneys' fees, in order to ensure that an infringement defendant does not abandon a meritorious defense in situations in which the cost of vindication exceeds the private benefit to the party. For without the prospect of such an award, an infringement defendant might be forced into a nuisance settlement or deterred altogether from exercising its rights.

*Klingler v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014).

As stated above, the Court believes that many of Design Basics' claims are premised on colorable (if barely) claims of similarity but no direct evidence of copying. In those situations, Design Basics seems content to roll the dice, hoping to survive summary judgment and exact a settlement. Without the imposition of attorneys' fees, there is nothing to deter Design Basics from filing suit against defendants based on the most tenuous similarities.

Compensation for parties like Defendants in this case is also important. As seen in this case, defending claims by Design Basics is neither quick nor cheap. This case has pended for three years, and Defendants have incurred more than $300,000.00 in attorney fees. Without the prospect of recovering some of those fees, similar defendants may be deterred from asserting the same meritorious defenses asserted in this case. This is particularly relevant with respect to Design Basics, as it has sued hundreds of defendants of varying economic resources, many of whom have done nothing more than prepare drawings for a widely appealing single-family home.

Design Basics warns that an award of attorneys' fees in this case would result in "overdeterrence," and claims that the high cost for it to prosecute "borderline or weak" cases is deterrence enough. (ECF No. 97 at 8). The Court disagrees, particularly in the case of Design

Basics. A review of the record and the case law seems to indicate that the only thing that could deter Design Basics is financial jeopardy. It was not deterred when it featured as the named plaintiff in a case that can only be described as a resounding defeat for architectural copyright claims, that being *Lexington*. Instead, it filed more than a dozen more cases in this Circuit after *Lexington* was decided. In addition, the cost of litigating borderline cases has not deterred Design Basics from bringing such suits. This case is a good example. Design Basics filed suit in this case with no evidence, either documentary or testimonial, that Defendants had copied any of its designs. Instead, it had only the superficial similarities between designs that one would expect in this marketplace. That fact did not deter Design Basics from pursuing Defendants for three years.

The award of attorneys' fees in this case would not act as "overdeterrence." Rather, it would simply require Design Basics and firms like it to be more selective in the cases they file instead of directing a shotgun blast of litigation at 1 in every 300 builders nationwide. The Court finds that for profligate filers like Design Basics, a direct threat to the bottom line is the only sufficient deterrent to abuse of the Copyright Act.

E.     *Weighing the Factors*

The Court finds that two factors (motivation and compensation/deterrence) support the award of fees while two (frivolousness and objective reasonableness) do not. Although objective reasonableness must be given "substantial weight," the Court nonetheless believes that a weighing of the *Fogerty* factors supports Defendants' request for attorneys' fees in this case. The Court reaches this conclusion for two reasons.

First, the objective reasonableness of any one of Design Basics' claims is diluted by the large number of similar cases that, although also objectively reasonable on their own, are legally deficient. Stated another way, this case is not unique. There is little, other than the plans at issue,

9

that separates it from *Lexington*, *Design Basics, L.L.C. v. Kerstiens Home & Designs, Inc.*, 1:16-CV-726 (S.D. Ind.); or the claims on which the defendant obtained summary judgment in *Big C Lumber*. While each of those claims may be individually reasonable, when viewed together they demonstrate fatal flaws in Design Basics' litigation model. That Design Basics continues to file these cases even after a string of similar defeats calls into question the ongoing reasonableness of Design Basics' claims.

Second, and most importantly, this Court believes that the case at bar is precisely the case the Supreme Court had in mind in *Kirtsaeng* when it wrote that a court could award attorney fees "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng*, 136 S.Ct. at 1989. As discussed above, the Court believes that Design Basics has been, at the minimum, overaggressive in its assertion of copyright claims. While some of Design Basics' claims have merit, particularly those where it has direct evidence of copying, it has gone far afield of those claims in cases like the one at bar. Rather than confine itself to those cases where evidence was strong, Design Basics has looked anywhere and everywhere for similarities to its designs, no matter how slight. The Court finds that this conduct is sufficient to overcome the objective reasonableness of this claim and concludes that Defendants are entitled to recover statutory fees and costs.

### III.  COMPUTATION OF REASONABLE FEES

In *Assessment Tech. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 438–39 (7th Cir. 2004), the Seventh Circuit adopted the approach of the Third Circuit in *Lieb v. Topstone Indus.*, 788 F.2d 151 (3rd. Cir. 1986), in calculating reasonable attorneys' fees in Copyright Act cases. *Lieb* held:

> Having decided that fees should be awarded, the district court must then determine what amount is reasonable under the circumstances. As we noted in *Chappell* [&

> *Co. v. Middletown Farmers Market & Auction Co.*], 334 F.2d [303] at 306 [3rd Cir. 1964], the relative complexity of the litigation is relevant. Also, a sum greater than what the client has been charged may not be assessed, but the award need not be that large. *Harris v. Emus Records Corp.*, 734 F.2d 1329 (9th Cir. 1984); *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F. Supp. 605 (S.D. Fla. 1966). The relative financial strength of the parties is a valid consideration, *American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc.*, 389 F.2d 903 (2d Cir. 1968); *Italian Book Corp. v. American Broadcasting Companies, Inc.*, 458 F. Supp. 65 (S.D.N.Y. 1978), as are the damages, *Oboler v. Goldin*, 714 F.2d 211 (2d Cir. 1983); *Russell v. Price*, 612 F.2d 1123 (9th Cir. 1979); *Cloth v. Hyman*, 146 F. Supp. 185 (S.D.N.Y. 1956). Where bad faith is present that, too, may affect the size of the award. *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir. 1984).

*Lieb*, 788 F.2d at 156. "The best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assessment Tech.*, 361 F.3d at 438.

A.  *Defendants' Claims*

Defendants have divided their fee claim into three categories. First, Defendants claim $309,072.75 in fees and costs for lead defense counsel Williams McCarthy LLP. Second, Defendants claim $5,490.00 in fees for local counsel Rocap Law Firm, LLC. Defendants claim these figures were computed using the lodestar method; i.e., multiplying reasonable fees by the reasonable hourly rate. *Sommerfield v. City of Chi.*, 863 F.3d 645, 650 (7th Cir. 2017); ECF No. 95-1, -2. All of these amounts were paid by Defendants' insurance carriers. ECF No. 95-1, ¶17; No. 95-2, ¶8. Finally, Defendants claim $29,500.00 in expert fees for Professor Robert Greenstreet.

B.  *Design Basics' Response*

In response, Design Basics submitted the expert report of Charles J. Meyer. (ECF No. 97-1). Meyer takes issue with several categories of charges contained in the Defendants' fees and costs requests. The Court will address each category.

1.     Costs Not Recoverable under § 505

Meyer first states that expert witness fees and other claimed fees are not available under 17 U.S.C. § 505 pursuant to the recent Supreme Court decision in *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S.Ct. 873, 878 (2019). (ECF No. 97-1 at 6–7, 16–17) Meyer is correct, as the Supreme Court expressly identified "expert witness fees" as expenses that are not authorized under the Copyright Act. Accordingly, Professor Greenstreet's witness fees must be excluded from any § 505 award. Meyer is similarly correct that charges for travel, meal, and Federal Express expenses are not authorized by § 505 and must be excluded from any award.

2.     Travel Expenses

Meyer asserts that a 50% reduction should be made to the amounts Defendants' claim for travel time, relying on *PropertyThree Tech. Grp., Inc. v. Apartment Hunters, Inc.*, 2010 WL 1654097, *3 (S.D. Ind. April 21, 2010). In that case, the court applied a 50% reduction in travel time expenses where defendant used California counsel who had to travel to Indianapolis for court proceedings. The court reasoned, "[g]iven the relative comfort of cross-county air travel and given the lack of any indication that counsel was actively working on this case during his flight," the court would reduce the hourly rate applied to travel time by half. *Id*.

The Court concludes that *PropertyThree* is not applicable here. The charges identified by Meyers are all for driving time from Rockford, Illinois, to Chicago. (ECF No. 97-1 at 8). Driving through Chicago traffic is far different than air travel, and counsel has no opportunity to work while at the wheel. Since there is no argument that the travel was unnecessary, the Court finds that Defendants are entitled to collect fees for the full amount claimed for travel time.

3. Reports to Insurers

Meyers next testifies that Defendants should not be permitted to recover attorney fees spent communicating with, and reporting to, Defendants' insurance carriers. Meyers describes these fees as redundant, suggesting that they were part of Defendants' "approach to litigation" that should not be shifted to Design Basics. The Court disagrees. As any insurance defense attorney can attest, regular reports to carriers are a necessary part of the job. Moreover, Design Basics benefitted from insurance involvement: both WilliamsMcCarthy and Rocap Law Firm charged reduced rates in this case because they were being paid by an insurer. (ECF No. 95 at 15). Had each firm charged their prevailing rates, the amount at issue would have been far greater. Therefore, the Court concludes that Defendants are entitled to collect fees for time spent communicating with insurers.

4. Unsuccessful Motions

Meyers next claims that Defendants should not recover for time spent on the motions to strike Plaintiffs' declarations and expert witness (ECF Nos. 79, 80, 86, 87) because the motions were "unnecessary." (ECF No. 97-1 at 11–12). While these motions were unsuccessful, this is not a basis to deny fees. As the Seventh Circuit has stated, "a plaintiff is not to be denied full attorneys' fees merely because he lost some interim rulings en route to ultimate success. Such setbacks are well-nigh inevitable, and a lawyer who nevertheless was sedulous to avoid them might lose a good case through an excess of caution." *Alliance to End Repression v. City of Chi.*, 356 F.3d 767, 770 (7th Cir. 2004) (citations omitted). It is true that the Court did not grant the identified motions, but the Court cannot say that the filing of the motions was unreasonable. Therefore, the Court finds that Defendants are entitled to collect fees for time spent on the identified motions to strike.

5. Vague Entries

Meyers also claims that fees should be excluded for activities with vague descriptions like "review file," "review status," and other similar entries. (ECF No. 97-1 at 12–13). It is true that vague entries can support a reduction in claimed fees where it "makes it impossible for the court to determine what share of [the entries] is actually compensable." *Boehm v. Martin*, 2017 WL 5176468, *6 (W.D. Wisc. Nov. 8, 2017). However, when such entries, taken in context, are sufficient to identify the substance of the work done, they are not properly excluded. *Berberena v. Coler*, 753 F.2d 629, 634 (7th Cir. 1985). The Court finds that it can evaluate the contested entries by viewing the context is which they were made. Take the first entry identified by Meyers: a June 6, 2016, entry for "review file for conference." (ECF No. 97-1 at 13). The very next entry on the time report is "conference with Mark Heller and Dick Rocap to discuss ProBuild license issue and plan history in detail." (ECF No. 95-1 at 5). Taken together, it is clear that the first entry is for file review to prepare for the conference referenced in the second entry. Therefore, the Court concludes that the contested entries are not so vague as to prevent recovery, and that Defendants are entitled to recover for the contested time entries.

6. First Summary Judgment Motion

Meyers appears to take issue with the time billed for briefing the first motion for summary judgment largely because Defendants were only successful on one of the grounds contained in the motion. (ECF No. 97-1 at 13–14). For the reasons explained in Subsection D. above, the Court concludes that an unfavorable ruling is not grounds to deny fees and finds that Defendants are entitled to the full claimed charges for briefing the first motion for summary judgment.

7. Second Summary Judgment Motion

With respect to the second motion for summary judgment, Meyers essentially argues that the issues discussed therein were not legally complex enough to support the amount claimed. (*Id.* at 14–16). The Court agrees that the legal issues were limited significantly by the decision in *Lexington* but disagrees that this mandates a reduction in the amounts charged. Whatever legal simplicity this case presents was more than overcome by the factual complexity involved. Design Basics designated twenty-nine exhibits in opposition to Defendants' Second Motion for Summary Judgment. (ECF No. 73). Each side submitted expert reports in excess of one hundred pages. Application of the *Lexington* substantial similarity standard necessarily involved an in-depth review of the minutiae of each and every plan. Therefore, the Court finds that the factual complexity of this case supports the fee amounts claimed relating to the second summary judgment motion and that Defendants are entitled to recover those amounts.

8. Future Fees

Finally, Meyers asserts that Defendants should not recover $1,350.00 in fees for the Rocap Law Firm that represent estimated fees to "work on this matter up to the entry of final judgment." (ECF No. 97-1 at 17; 95-2 at 2). Meyers asserts that "[a] prediction of future, estimated fees does not satisfy the claimant's burden of substantiating the hours worked." On the facts in the record, the Court agrees. Defendants make no effort to describe the work that will be necessary or explain why that work will take an estimated ten hours. Accordingly, Defendants have failed to carry their burden on the claimed future fees, and such fees will be excluded from the award.

C. *Award Calculation*

The Court has reviewed the time entries claimed by the Defendants and concludes, with the exceptions noted above, that they represent reasonable time spent on this case multiplied by a

reasonable rate. This is particularly true because all the time claimed was actually paid by Defendants' insurance carriers. Therefore, the Court concludes that an award of fees and costs in the amount of $310,759.24 is appropriate in this case. This amount represents Defendants' requested amount minus the costs excluded from § 505 and the estimated charges by the Rocap Law Firm.

## CONCLUSION

For the foregoing reasons, this Court GRANTS Defendants' Petition for Attorney Fees and Costs (ECF No. 95) and awards Defendants fees and costs in the amount of $310,759.34. The Clerk is DIRECTED to enter judgment in favor of the Defendants and against Plaintiffs in this amount.

SO ORDERED on September 3, 2019.

        s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT